# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MITEZ T. ORMOND,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CTVSEH PLLC D/B/A CENTRAL** | § | **Case No. 1:20-CV-661-RP** |
| **TEXAS VETERINARY SPECIALITY** | § | |
| **AND EMERGENCY HOSPITAL,** | § | |
| *Defendant* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion for Summary Judgment, filed June 30, 2021 (Dkt. 13); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Motion to Strike, filed July 14, 2021 (Dkt. 16); Defendant's Objections to Plaintiff's Summary Judgment Response and Motion to Strike, filed July 21, 2021 (Dkt. 18); Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgement, filed July 21, 2021 (Dkt. 19); and Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Response, filed July 28, 2021 (Dkt. 21). On August 2, 2021, the District Court referred the motions to the undersigned Magistrate Judge for disposition and report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.   Background

Plaintiff Mitez ("Mitzi") T. Ormond brings this employment discrimination suit against her former employer, Defendant Central Texas Veterinary Specialty & Emergency Hospital ("CTVSEH"), under the Americans with Disabilities Act of 1990 ("ADA"), the Family Medical

Leave Act ("FMLA"), and the Texas Labor Code. CTVSEH is a Texas professional limited liability company that operates three animal care hospitals in the Central Texas area.

### A. Plaintiff's Job

In October 2013, CTVSEH hired Plaintiff for the position of Accounts Receivable Bookkeeper; later, she was promoted to Accounts Receivable Manager. Plaintiff's job duties included overseeing accounts receivables, collecting money owed from clinics, going to different office locations to collect funds and paperwork, and depositing funds into CTVSEH's bank account. Ormond Dec. (Dkt. 16-1) ¶ 2. Dr. Stephanie Beardsley, DVM, DACS, the Chief Executive Officer of CTVSEH, was Plaintiff's direct supervisor, and Hospital Relations Manager Kim Messenger handled human resources issues.

Plaintiff contends that she "was a salaried employee with a Flex schedule," so that she set "my own schedule and was not required to be in the office at particular times." *Id.* ¶ 3. Plaintiff states that she typically worked in person at one of CTVSEH's locations, but "would also regularly work from home." *Id.* Plaintiff contends that "CTVSEH never had a strict attendance and call-in procedure for administrative employees." *Id.* ¶ 17. Plaintiff alleges that her general practice was to text Dr. Beardsley if she planned to work from home or take time off. Plaintiff contends that there were a few occasions where she did not inform Dr. Beardsley she was missing work until after the fact, but "[Dr. Beardsley] never seemed to care, or think I was doing something wrong." *Id.*

In contrast, Defendant contends that Plaintiff, like all of its employees, was required to follow the CTVSEH attendance policy for requesting Paid Time Off ("PTO") or a Work From Home ("WFH") day which had not been approved in advance. That policy was (1) to notify Dr. Beardsley before the start of the business day and inform her of the employee's reason for being out;

(2) confirm that essential responsibilities would be covered by a co-worker; (3) enter absence and contact information in the event of an emergency in the company's veterinary practice management software; and (4) request PTO hours for all time missed in the CTVSEH payroll software system. Beardsley Aff. (Dkt. 13-5) ¶ 8.

Defendant also submitted summary judgment evidence showing that Plaintiff had excessive absences during 2017 and 2018. For example, during 2017, Plaintiff took 194 hours of PTO, exceeding her 137-hour PTO allowance for that year, and had another 99.5 hours of undocumented time away from the office for which she was fully paid. Dkt. 13-5 ¶ 14. Between January 1, 2018 and July 20, 2018, Plaintiff took at least 166 PTO hours, exceeding her 88-hour hourly PTO allowance for 2018, and was paid for an additional 46 undocumented hours off. *Id.* ¶ 15. Plaintiff does not dispute this.

### B.  Plaintiff's Health Issues

Plaintiff alleges that she has experienced various health issues "over the years," including seizures and migraine headaches. Ormond Dec. (Dkt. 16-1) ¶¶ 4-5. Plaintiff was diagnosed with epilepsy and migraine headaches in October 2017. *Id.* ¶ 4; Dkt. 16-15 at 2. Plaintiff alleges that she is unable to work when she has migraine headaches and seizures. Ormond Dec. (Dkt. 16-1) ¶ 5. Plaintiff alleges that she began taking medications in 2018 to control her symptoms but experiences serious side effects, including dizziness, sleepiness, and difficulty focusing. *Id.* ¶ 6.

Plaintiff alleges that Defendant was aware of her medical conditions and that she was taking prescription medications to control her symptoms. *Id.* ¶ 7. Plaintiff contends that she frequently discussed her migraine headaches with both Dr. Beardsley and Messenger because they also suffered from migraine headaches. *Id.* Plaintiff also contends that she provided medical documentation of her medical conditions to Dr. Beardsley and Messenger. *Id.* ¶ 8.

Although Defendant admits that Plaintiff told Dr. Beardsley and Messenger that she suffered from migraine headaches, it contends it was unaware that she suffered from a "serious health condition." Beardsley Aff. (Dkt. 13-5) ¶ 6-7. Defendant also disputes that Plaintiff ever provided Dr. Beardsley or Messenger with medical documentation of her migraine headache and epilepsy diagnoses. *Id.* While Defendant claims in its "Statement of Facts" that Dr. Beardsley and Messenger were not aware "that Plaintiff claimed to have a seizure condition before Plaintiff was terminated," Dkt. 13-2 ¶ 5, Dr. Beardsley admits in her deposition that she received text messages from Plaintiff on June 5 and June 8, 2018, informing her that Plaintiff had suffered seizures. Beardsley Dep. (Dkt. 13-14) 24:2-9; Dkt. 16-6 at 1, 6.

## C. Plaintiff's Termination

In the spring of 2018, CTVSEH transitioned its practice management software system from DVMax, which it had used for 23 years, to ezyVet. Defendant contends that all administrative employees were required to attend training sessions in July 2018 to learn the new software system. On July 18, 2018, Plaintiff arrived for a 7 a.m. mandatory training session at the South location of CTVSEH. Plaintiff alleges that Dr. Beardsley gave Plaintiff permission to leave the training early to "go about my normal Wednesday duties, traveling to the other locations to collect money and paperwork." Ormond Dec. (16-1) ¶ 9. Accordingly, Plaintiff left the South location office sometime between 7:30 a.m. and 8:45 a.m.

Defendant contends that at approximately 8 a.m. that same day, Dr. Krista Adamovich approached Enma Anderson, one of Plaintiff's co-workers, and said that she was looking for Plaintiff and could not find her. Anderson Aff. ¶ 8. Defendant avers that Dr. Adamovich was concerned because she had a client (the "Client") coming in at 10 a.m. for a recheck appointment and no payment had been entered in the Client's account since the Client's previous appointment

on June 21, 2018. *Id.* Plaintiff was responsible for entering payments into client accounts. Defendant contends that it had a strict policy of refusing to render additional services to a client if the client did not make any payment on his or her accounts receivable since the last appointment. *Id.* ¶ 9. Therefore, Defendant contends, Anderson called Plaintiff on her cell phone at 8:30 a.m. to inquire about the Client's account. *Id.* ¶ 10. Defendant avers that Plaintiff told Anderson that she would look into the matter later that day once she was able to access a computer. Because the Client was coming in later that morning, Defendant contends that Anderson then informed Operations Manager Torrey Pond and Dr. Beardsley so that they could handle the matter. Beardsley Aff. (Dkt. 13-5) ¶ 9.

Dr. Beardsley then checked both DVMax and ezyVet and saw that Plaintiff had not entered any payments in the Client's account since the Client's last appointment. *Id.*[1] Dr. Beardsley called Plaintiff on her cell phone at 9:05 a.m. to ask why Plaintiff had not updated the Client's account. *Id.* Plaintiff alleges that she was not able to answer Dr. Beardsley immediately because she was driving and did not have access to a computer. Ormond Dec. (Dkt. 16-1) ¶ 10. Dr. Beardsley ended the call by telling Plaintiff that "if she wanted to do her job, to do it, and if not, she needed to decide." Beardsley Aff. (Dkt. 13-5) ¶ 9. Plaintiff alleges that immediately after Dr. Beardsley's call, she became worried that "I was being or had been fired," and so she

> quickly researched the issue, and learned that the customer had paid but that the payment was not correctly recorded in CTVSEH's computer system. I called someone else at CTVSEH and had them update the computer system to reflect the payment, then I left Dr. Beardsley a voicemail telling her the client had paid.

Ormond Dec. (Dkt. 16-1) ¶ 10. Defendant disputes this and contends that after getting off the call from Dr. Beardsley:

---

[1] Defendant alleges that it later discovered the Client had made an online payment sent to Plaintiff's email 10 days before. Beardsley Dep. (Dkt. 13-14) 119:22-120:24.

> Mitzi then called a client care team member at 9:08 a.m. and coerced her to add the payment information but to back date it so that it would appear to have been added a few days earlier. Mitzi then left a voicemail message for me at 9:13 a.m. and lied, saying the information was already in there. I knew that Mitzi had lied to me about the status of the client's payment on the account because I had just checked it myself.

Beardsley Aff. (Dkt. 13-5) ¶ 9. Defendant further contends that because Plaintiff had never logged into the ezyVet software, "[Plaintiff] did not realize that one of the controls of the ezyVet software program is that it automatically time-stamped the entry at 9:11 a.m., after Dr. Beardsley had called Plaintiff," and thus Plaintiff was unaware that Dr. Beardsley could monitor when Plaintiff accessed the system. Dkt. 13-2 ¶ 67 (citing Dkt. 13-36).

Regardless, Plaintiff worked the remainder of that day and took home $16,000 in CTVSEH cash, $14,000 in CTVSEH checks, and CTVSEH business records which, according to Defendant, "needed to be immediately processed through the DVMax and ezyVet software programs." Beardsley Aff. (Dkt. 13-5) ¶ 10.

The next day, on Thursday, July 19, 2018, Plaintiff "took a personal day" and did not work. Ormond Dec. (Dkt. 16-1) ¶ 13. Plaintiff alleges that she took a personal day because she was having a bad headache. *Id.* However, Plaintiff's text to Dr. Beardsley that morning did not mention a headache, stating instead: "I never heard back from you yesterday so [I] will need to take a personal day today." Dkt. 13-39. Dr. Beardsley responded that she did not have time to talk to her but "[w]hen you come in we can talk face to face." *Id.*

On Friday, July 20, 2018, Plaintiff sent Dr. Beardsley a text message asking Dr. Beardsley to "reconsider your decision made on Wednesday,"[2] that she hoped that they "can talk over a cup of coffee maybe next Monday if your schedule will allow," and noted that '[t]hese last three days

---

[2] Plaintiff alleges that at that time she believed that Dr. Beardsley had fired her on Wednesday.

have my migraines in overdrive." *Id.* Plaintiff did not ask Dr. Beardsley if she could take the day

off. In response to Plaintiff's text, Dr. Beardsley stated: "If you are not coming in today, I need

you to courier all the stuff you have from RR and North [which Plaintiff took home on July 18th]

so we can get the work completed." *Id.* Plaintiff did not respond to Dr. Beardsley's message and

did not courier the cash, checks, and business records to Defendant. Plaintiff claims that she never

saw the message because she was on strong medications and "spent most of the day asleep."

Ormond Dec. (Dkt. 13-1) ¶ 14.

On Sunday, July 22, 2018, Dr. Beardsley sent Plaintiff a text message notifying her that she

was terminated because she failed to follow the CTVSEH absence policy and was a "no call no

show" on July 20, 2018. Dkt. 13-39. Plaintiff argues that when Defendant terminated her, "it knew

that [Plaintiff] was claiming she was unable to work that day due to a medical condition." Dkt. 16

at 13. Plaintiff argues that "she was fired for missing work" because her "disability caused her to

miss work." *Id.* at 13-14. Thus, Plaintiff contends, she was terminated because of her disabilities.

Defendant denies this and alleges that it fired Plaintiff because she (1) failed to show up for

work on July 20, 2018; (2) failed to follow the CTVSEH absence notification policy; (3) was

excessively absent and greatly exceeded her accrued PTO; (4) failed to comply with

Dr. Beardsley's direct order to courier cash, checks, and business records to Defendant; and

(5) had poor job performance over the prior two years.

### D.  This Litigation

On April 24, 2020, Plaintiff filed this case in state court, alleging that Defendant (1) violated

the ADA and the Texas Labor Code by discriminating against her because of her disability and for

failing to accommodate her disability; and (2) interfered with her rights under the FMLA. *Ormond*

*v. CTVSEH PLLC*, D-1-GN-20-002278 (98th Dist. Ct., Travis County, Tex. April 24, 2020) (Dkt. 2

at 9-17). Defendant removed this case to federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(a) on June 24, 2020.

Defendant now moves for summary judgment under Federal Rule of Civil Procedure 56(a), arguing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on all of Plaintiff's claims. Plaintiff opposes the Motion. Both parties also have filed motions objecting to the other's summary judgment evidence.

The Court makes the following rulings and recommendations.

## II.    Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(a)).

If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But if the movant meet this burden, the nonmovant must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.   Motions to Strike Evidence

The Court addresses the parties' evidentiary motions first.

### A.  Defendant's Motion to Strike

In support of her opposition to Defendant's Motion for Summary Judgment, Plaintiff relies in part on her sworn declaration, which summarizes her version of the facts of the case. *See* Ormond Dec. (Dkt. 16-1). Defendant argues that the Court should strike Plaintiff's Declaration because it is "self-serving and conclusory" and "filled with nothing more than her iteration that despite what Dr. Beardsley or Kim Messenger testified to under oath, the opposite is true." Dkt. 18 at 1.

First, Defendant is mistaken that self-serving affidavits may not serve as competent summary judgment evidence. *See United States v. Carter*, 737 F. App'x 687, 691 (5th Cir. 2018). As the

9

Fifth Circuit has explained: "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone. Instead, an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011); *see also Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts."). "If all 'self-serving' testimony were excluded from trials, they would be short indeed." *C.R. Pittman*, 453 F. App'x at 443.

In addition, Defendant's argument that the Court should strike Plaintiff's Declaration because Plaintiff's version of the facts conflicts with Defendants' version "is inconsistent with fundamental rules governing summary judgment."

> By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party. Doing so is tantamount to making a credibility determination, and—at this summary judgment stage—a court may make no credibility determinations. . . . Although a court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence, a nonmovant's statement may not be rejected merely because it is not supported by the movant's or its representatives' divergent statements.

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (cleaned up).

Simply put, Ormond's statements are no more and no less self-serving than those of the Defendant. *Id.* Accordingly, Defendant's objection to Plaintiff's Declaration for being conclusory or self-serving is meritless.

Defendant also objects to certain medical records from the Austin Epilepsy Care Center on which Plaintiff relies to show that she suffers from epilepsy. *See* Dkt. 16-15. Although Defendant

acknowledges that these medical records "were provided by Defendant as a courtesy" and does not dispute their authenticity, Defendant nevertheless argues that they should be stricken because "Plaintiff merely offers them to bolster her own unsubstantiated Declaration" and, therefore, they are "self-serving" medical records. Dkt. 18 at 3. Again, this is not an appropriate basis for objection to summary judgment evidence. *See Heinsohn*, 832 F.3d at 245.

Finally, Defendant objects to documents submitted to the Texas Workforce Commission ("TWC") during its administrative review of Plaintiff's discrimination claims. These documents include: (1) medical records from Dr. Sami Aboumatar, Plaintiff's treating physician, which state that Plaintiff has been diagnosed with epilepsy and migraine headaches (Dkts. 16-4; 16-15); (2) a one-page Work Separation document completed by Messenger summarizing the duration of Plaintiff's employment (Dkt. 16-19); (3) a letter from Dr. Beardsley summarizing the final days of Plaintiff's employment (Dkt. 16-11); and (4) a letter from Messenger summarizing the final days of Plaintiff's employment (Dkt. 16-12).[3] Defendant argues that the Court should strike these documents because they are "littered with Plaintiff's handwritten notes and self-serving hearsay" and are "inadmissible under Texas Labor Code § 213.007." Dkt. 18 at 5.

Once again, Defendant's contention that self-serving evidence is improper at summary judgment is meritless. Defendant also is mistaken that these documents are inadmissible under § 213.007 of the Texas Labor Code. Section 213.007 provides that:

> A finding of fact, conclusion of law, judgment, or final order made under this subtitle is not binding and may not be used as evidence in an action or proceeding, other than an action or proceeding brought under this subtitle, even if the action or proceeding is between the same or related parties or involves the same facts.

---

[3] Defendant mistakenly refers to Messenger's letter as Exhibit 16 instead of Exhibit 12 in the title of Defendant's Motion to Strike.

Thus, under Texas law, "the Texas Workforce Commission's *findings and conclusions* may not be used as evidence in lawsuits, except for suits brought to enforce unemployment benefits." *Williams v. Aviall Servs. Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003) (citing § 213.007) (emphasis added); *see also Cartagena v. Aegis Mortg. Corp.*, 275 F.3d 46, 2001 WL 1268730, at *4 n.2 (5th Cir. 2001) (same). Here, Plaintiff has not proffered findings and conclusions of the TWC as summary judgment evidence; rather, Plaintiff relies on a letter from her treating physician and three documents from Defendant describing why Plaintiff was terminated, all of which were submitted to the TWC during her administrative proceedings. Accordingly, these documents do not violate Texas Labor Code § 213.007 and Defendant's objections are baseless. *See Weddle v. Safety-Kleen Sys., Inc.*, No. 4:11-CV-017, 2012 WL 2505730, at *4 (E.D. Tex. June 28, 2012) (noting that while TWC's findings are inadmissible, "testimony before the Texas Workforce Commission is proper summary judgment evidence"); *see also Govea v. Landmark Indus., Ltd.*, No. SA-10-CV-200-XR, 2011 WL 632858, at *2 n.36 (W.D. Tex. Feb.10, 2011) (considering testimony before the TWC when considering motion for summary judgment).

Based on the foregoing, Defendant's Motion to Strike (Dkt. 18) is **DENIED**.

**B.  Plaintiff's Motion to Strike**

Plaintiff asks the Court to strike Defendant's 35-page "Statement of Facts in Support of Defendant's Motion for Summary Judgment" (Dkt. 13-2), attached to its 18-page Motion for Summary Judgment, because Defendant's Motion exceeds the 20-page limit in Local Rule CV-7(c)(2). While the Court agrees that Defendant's attachment circumvents the page limit, that is not a basis for exclusion. Local Rule CV-7(c)(1) provides that: "An appendix may be filed with the motion specifying any factual basis relied upon. If filed, the appendix must include all affidavits, deposition transcripts, or other documents supporting the relied upon facts." Moreover, Local Rule

CV-7(c)(2) states that the 20-page limit is "exclusive of the caption, signature block, any certificate, and any accompanying documents." Accordingly, the Statement of Facts summarizing Defendant's version of the facts does not violate Local Rule CV-7(c)(2), and, therefore, Plaintiff's Motion to Strike is **DENIED**. *See Simms v. City of San Antonio, Texas*, No. 5:18-CV-00211-DAE, 2019 WL 7900484, at *4 (W.D. Tex. May 24, 2019) (overruling plaintiff's motion to strike defendant's summary of facts).

## IV.   Defendant's Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment on Plaintiff's ADA and Texas Labor Code claims because Plaintiff has failed to make out a prima facie case of disability discrimination. Alternatively, Defendant argues that even if Plaintiff has demonstrated a prima facie case of disability discrimination, it has provided legitimate nondiscriminatory reasons for terminating her.

### A.  Plaintiff's ADA and Texas Labor Code Claims

Plaintiff alleges that Defendant discriminated against her on the basis of her disability and failed to accommodate her disability, in violation of the ADA and the Texas Labor Code.[4] Discrimination under the ADA includes both a failure to accommodate a disability and disparate treatment because of a disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014). The Court turns first to Plaintiff's discrimination claim.

#### 1.  Discrimination Claim

Plaintiff alleges that she was terminated because of her migraine headaches, in violation of the ADA. The ADA prohibits employers from discriminating against "a qualified individual on the

---

[4] Because the Texas Labor Code parallels the language of the ADA, courts evaluating discrimination claims brought under the Texas Labor Code apply ADA law in evaluating such claims. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir.), *cert. denied*, 141 S. Ct. 662 (2020). Accordingly, the following ADA analysis applies equally to Plaintiff's state law claims. *Id.*

basis of disability" by, among other things, terminating the individual's employment. 42 U.S.C. § 12112(a). Because Plaintiff offers only circumstantial evidence to prove her claim, the Court applies the *McDonnell Douglas* burden shifting framework. *See LHC Gp.*, 773 F.3d at 694 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, an employee first must show a *prima facie* case of disability discrimination. *Id.* Once an employee has established her *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for" the adverse employment action. *Id.* The employee then must present evidence that the articulated reason is pretextual. *Id.*

To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove that (1) she has a disability; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of her disability. *Id.* at 697. In this case, the Court need not decide whether Plaintiff established her *prima facie* case because, even if she has, Defendant provided numerous, legitimate nondiscriminatory reasons for firing her. *See Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 428 (5th Cir. 2018) (stating that court need not decide whether plaintiff established prima facie case because, even if she had, defendant presented non-pretextual reason for firing her).

### a. Legitimate Nondiscriminatory Reasons for Plaintiff's Termination

Defendant stated that it fired Plaintiff because she (1) failed to show up for work on July 20, 2018; (2) failed to follow the CTVSEH absence notification policy; (3) was absent excessively and greatly exceeded her accrued PTO; (4) failed to comply with Dr. Beardsley's direct order to courier cash, checks, and business records to Defendant; and (5) had poor job performance for two years. These all are legitimate, nondiscriminatory reasons for termination.

It is undisputed that Plaintiff neither worked on June 20, 2018 nor received approval from Dr. Beardsley to take a personal day off, as required by CTVSEH's attendance policy. "[A]s

should go without saying, an employee's failure to show up for work is a legitimate reason for firing her." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020) (quoting *Trautman*, 756 F. App'x at 428 (collecting cases)).[5]

Defendant also submitted summary judgment evidence that Plaintiff had excessive absences in 2017 and 2018. For example, during 2017, Plaintiff took 194 hours of PTO, exceeding her 137-hour PTO allowance for the year, plus another 99.5 hours of undocumented time away from the office for which she was fully paid. Dkt. 13-5 ¶ 14. Between January 1, 2018 and July 20, 2018, Plaintiff took at least 166 PTO hours, which exceeded her 88-hour PTO allowance for 2018, and was paid for 46 more undocumented hours off. *Id.* ¶ 15. Plaintiff does not dispute this. Excessive absenteeism is a legitimate, non-discriminatory reason to fire an employee. *Trautman*, 756 F. App'x at 428 (holding that employer stated a legitimate reason for firing plaintiff—excessive absenteeism—where plaintiff accrued 200 hours of absences).

In addition, "[t]he failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999). Accordingly, Plaintiff's failure to comply with Dr. Beardsley's directive to courier cash, checks, and business records to Defendant on July 20, 2018 also is a legitimate reason for termination.

Another legitimate reason for termination is poor work performance. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (holding that poor work performance was

---

[5] *See also Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (per curiam) ("Contrary to [the employee's] assertion, the evidence demonstrates that the [employer] terminated [him] for violating the attendance policy, not because he used his FMLA leave."); *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) (per curiam) ("[The employer's] stated reason for [the employee's] termination—absenteeism—is a legitimate nondiscriminatory reason for its decision."); *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (per curiam) (recognizing that record of excessive absences is legitimate, nondiscriminatory reason to fire employee).

legitimate, nondiscriminatory reason for termination where employee had received critical work assessments and broken some work equipment, improperly accessed the Internet, and failed to complete tasks absent direction); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (holding that employer proffered legitimate, nondiscriminatory reasons for terminating employees where employer alleged employees had history of poor job performance, difficulties working with others, inadequate technical and leadership skills, inefficiency, and excessive billing).

Based on the foregoing, Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for firing Plaintiff.

### b.  Plaintiff Fails to Show Pretext

In response to a motion for summary judgment, an employee must present "substantial evidence" that the employer's legitimate, nondiscriminatory reason for termination is pretextual. *Burton*, 798 F.3d at 233. Plaintiff has not shown by a preponderance of the evidence that Defendant's articulated reasons for her termination were pretextual. Pretext is established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016). Here, Plaintiff does neither.

Plaintiff argues that Defendant's articulated reasons for terminating her – specifically, Plaintiff's excessive absences and failure to come to work or ask for the day off on June 20, 2018 – are pretextual because Defendant never had a rigorous and consistently enforced attendance policy. Plaintiff argues that given her flexible schedule and Defendant's past approval of her previous absences, terminating her for not being at the office on a specific day is "nonsensical." Dkt. 16 at 14. Courts, however, have found that an employer's past approval of leave is evidence that the employer's proffered reason for terminating Plaintiff was not pretextual. *See Villarreal v. Tropical Texas Behav. Health*, No. 20-40782, 2021 WL 3525023, at *4 (5th Cir. Aug. 10, 2021)

(finding fact that employer had record of granting employee accommodations "whenever she requested and even when the law did not compel them" strongly weighed against an inference of pretext); *Trautman*, 756 F. App'x at 429 (considering employer's past conduct of approving FMLA leave as evidence proffered reason for firing employee was not pretext); *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 212 (5th Cir. 2015) (same). Accordingly, the fact that Defendant had permitted Plaintiff to work a flexible schedule and routinely approved her PTO in the past cuts against her argument that Defendant's proffered reason for termination was pretextual.

Plaintiff further argues that Defendant's purported reasons for termination are pretextual because she received a "meets expectations" score on the "Dependability and Attendance" section of her Performance Evaluation two months before she was terminated. Plaintiff fails to mention that the Performance Evaluation also stated the following:

- The South hospital would benefit more if Mitzi were in the hospital more and working from home less.

- Mitzi does not report to work on regular basis, it's hard sometimes to know which days she will be out and which days she will be in the office. If she is at the office we never know for how long she will be there since she tends to leave early.

- There are times that Mitzi does not stay on top of issues that need to be completed or dealt with. She needs to be reminded about them. There were north invoices never sent out and employees' account balances have been allowed to go too high without warning or notice.

- Mitzi seems to be productive when she is here. I think the employees would benefit if Mitzi were in the office more often and have less days working from home.

Dkt. 16-8 at 1-2. These comments do not show pretext but support Defendant's proffered reasons for termination, namely, Plaintiff's failure to appear for work and her poor job performance.

In addition, Plaintiff has failed to come forward with any evidence that an employee who had an attendance record similar to Plaintiff was treated more favorably. *See Delaval*, 824 F.3d at 480

(finding that plaintiff did not show employer's proffered reason for termination – violation of the company's attendance policy – was pretextual where plaintiff failed to contend that he was treated differently than any other employee regarding the attendance policy).

In sum, the Court concludes that Plaintiff has failed to produce evidence from which a reasonable jury could infer that the reasons Defendant gave for its decision to terminate her were pretextual. Plaintiff has offered no evidence that Defendant's stated reason was not the true one, such as that non-disabled employees were treated differently or that the explanation was so implausible as to be a cover-up. Rather, Plaintiff offers only her own speculation that her alleged disabilities motivated the decision to fire her. The Fifth Circuit has "consistently held that an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *E.E.O.C. v. Louisiana Off. of Cmty. Servs.*, 47 F.3d 1438, 1447-48 (5th Cir. 1995). Accordingly, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim.

### 2. Failure to Accommodate Claim

Plaintiff also alleges that Defendant failed to accommodate her disability by allowing her to take leave on July 20, 2018, in violation of the ADA. Under the ADA, an employer must "make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Delaval*, 824 F.3d at 479 (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on her failure to accommodate claim, Plaintiff must show that (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

Plaintiff fails on the first prong. A plaintiff can establish that she is qualified by showing either that (1) she could perform the essential functions of the job in spite of her disability, or (2) a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job. *Id.* "However, the inability (or refusal) to attend work disqualifies one from being a 'qualified individual with a disability' under the ADA. That is because an essential element of any job is an ability to appear for work and to complete assigned tasks within a reasonable period of time." *Villarreal*, 2021 WL 3525023, at *5 (cleaned up).

Plaintiff was not qualified to perform her job because she was not able to appear for work regularly and perform the essential functions of her job, even with her flexible schedule. *See Hypes ex rel. Hypes v. First Com. Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) ("Since regular attendance is an essential function of [employee's] job, and since he could not be expected to have regular attendance even with the requested flex-time accommodation, [employee] is not 'otherwise qualified' to perform this job and thus may not prevail under the ADA."); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("Because [employee] could not attend work, he is not a 'qualified individual with a disability' under the ADA."). As detailed above, Plaintiff greatly exceeded her PTO allowance and regularly failed to show up to work.

Moreover, "[a]n accommodation that does not permit an employee to perform essential job functions cannot be considered reasonable." *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 525 (N.D. Tex. 2009). In other words, Defendant was not required to eliminate the requirement that Plaintiff appear for work and perform her job duties in order to accommodate her disability. *Id.* Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate that Defendant denied her a reasonable accommodation of her disability.

Even if Plaintiff was a "qualified individual," her failure to accommodate claim fails at a more fundamental level: Plaintiff never requested an accommodation on June 20, 2018. In Plaintiff's text to Dr. Beardsley that day, Plaintiff did not ask to take the day off to accommodate her migraine headaches. "It is the plaintiff's burden to request reasonable accommodations." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir.), *cert. denied*, 141 S. Ct. 662 (2020). Because Plaintiff did not request an accommodation, reasonable or otherwise, her claim fails. *Id.*

Based on the foregoing, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim.

### B.  Plaintiff's FMLA Claim

Plaintiff alleges that Defendant interfered with her rights under the FMLA by failing to give her individualized notice of leave available under the statute. Plaintiff contends that she "informed Defendant of her serious medical conditions, namely her seizure condition which entitled her to FMLA leave," but that "Defendant never presented Plaintiff with information regarding FMLA leave or suggested to Plaintiff that FMLA leave was available." Plaintiff's Original Pet. (Dkt. 2 at 9-17) ¶ 35.

The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the birth of a child or the occurrence of a "serious health condition." 29 U.S.C. § 2612(a)(1). The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.* § 2615(a)(2). The FMLA also makes it unlawful for any employer to "interfere with, restrain, or deny" the exercise of any right provided under the FMLA. *Id.* § 2615(a)(1).

Plaintiff alleges that Defendant interfered with her rights under the FMLA by failing to give her individualized notice of leave available under the statute. An FMLA interference claim requires proof that the employer "interfered with, restrained, or denied" the plaintiff's exercise or attempt to exercise his FMLA rights and that the violation prejudiced him." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). Failure to provide notice as required may constitute "interference with, restraint, or denial of the exercise of an employee's FMLA rights." § 825.300(e).

To make a *prima facie* case of interference, a plaintiff must show that (1) she was an eligible employee, (2) her employer was subject to the FMLA, (3) she was entitled to FMLA leave, (4) she notified her employer of her intent to take FMLA leave, (5) her employer interfered with her exercise of FMLA rights, and (6) she was prejudiced as a result. *See Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (requiring a showing of prejudice to prevail on a FMLA interference claim).

It is undisputed that Defendant is a covered employer and Plaintiff is an eligible employee. Defendant disputes the remaining factors.

### 1.  Plaintiff Has a Serious Health Condition

Defendant first argues that Plaintiff's notice claim fails because Plaintiff does not suffer from a serious health condition. Defendant argues that Plaintiff's seizure condition does not qualify as a serious health condition because "[s]he never alleged that she needed inpatient care." Dkt. 13 at 12. Defendant misreads the statute and corresponding regulations.

21

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The regulations promulgated under the statute clarify that a "serious health condition" encompasses "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition," including "episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." § 825.115(c)(3). Thus, the regulations specifically state that epilepsy is a chronic serious health condition. *See Hester v. Bell-Textron, Inc.*, No. 20-11140, 2021 WL 3720103, at *1 (5th Cir. Aug. 23, 2021) (stating that epilepsy is a serious health condition under FMLA); *Franklin v. Union Pac. R.R. Co.*, No. SA-17-CV-00020-OLG, 2018 WL 8576557, at *4 (W.D. Tex. May 15, 2018) (stating that epilepsy may constitute "chronic serious health condition" that causes "episodic" incapacity). As previously noted, Plaintiff has provided summary judgment evidence that she was diagnosed with epilepsy and suffers intermittent incapacitating seizures. Dkt. 16-1 ¶ 5; Dkt. 16-15. Accordingly, Plaintiff has created at least a fact issue as to whether she suffers from a serious health condition as defined by the FMLA.

### 2. General Notice Requirements

Defendant next argues that Plaintiff's notice claim fails because Defendant complied with the general FMLA notice requirements by posting the relevant FMLA provisions and procedures for filing complaints under the statute at its offices and in its employee handbook. *See* 29 C.F.R. § 825.300(a). Defendant's argument is misplaced. Plaintiff is not claiming that Defendant failed to comply with the general notice requirements under § 825.300(a); rather, Plaintiff alleges that Defendant violated the individual eligibility notice requirements of § 825.300(b).

### 3. Plaintiff Did Not Notify Defendant

Next, Defendant argues that Plaintiff's notice claim fails because Plaintiff never "asked for, and was denied, FMLA leave." Dkt. 13 at 13. The Court agrees. "While the employee has a right to take leave under the FMLA, the employee must give his employer notice of his intention to take leave in order to be entitled to it." *Acker*, 853 F.3d at 788. The employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request," such as including information "that a condition renders the employee unable to perform the functions of the job." 29 C.F.R. § 825.303(b). In other words, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). Thus, the Court must determine whether a rational juror could conclude that the information Plaintiff gave Defendant was "sufficient to reasonably apprise it of [Plaintiff's] request to take time off for a serious health condition." *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998) (quoting *Manuel*, 66 F.3d at 764).

In support of her argument that she requested FMLA leave, Plaintiff relies on the following text messages she sent Dr. Beardsley between June 5 and July 20, 2018:

> June 5, 2018, 8:50 AM: So sorry but I can't come in today. I had a seizure this morning and I need to take some pain medicine.
>
> June 6, 2018, 10:37 AM: Back to normal schedule today fingers crossed
>
> June 7, 2018, 9:31 AM: Just leaving Chase and I'm going to the ER/Neurologist. I've been up since 4 am with this crazy bad headache. I took care of getting south receipts chart and Derm drugs dropped off this morning and will keep you posted if I don't die first [sad face emoji]
>
> June 8, 2018, 9:17 AM: Sorry Dr B the pain shots from yesterday made me sleep and I forgot to have Audrey hit the send button. I have had two harder seizure than in the past and a combination of two other issues that work against each other Stronger drugs will help [g]et me back on my feet I will be back at work Monday and will concentrate on getting South and EC caught up.

> June 20, 2018, 8:35 AM: . . . I hope we can talk over a cup of coffee maybe next Monday if your schedule will allow[.] These last three days have my migraines in overdrive.

Dkt. 16-6 at 1-7; Dkt. 13-39.

The Court finds that no rational trier of fact could conclude that Plaintiff's texts were sufficient to reasonably apprise Defendant of Plaintiff's request to take time off for a "serious health condition" within the meaning of the FMLA. *Satterfield*, 135 F.3d at 980. "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c); *see also Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995) ("We hold that the Family and Medical Leave Act of 1993 does not require an employee to invoke the language of the statute to gain its protection when notifying her employer of her need for leave for a serious health condition."). But the employee must ask for leave. *See Burnette v. RateGenius Loan Servs., Inc.*, 671 F. App'x 889, 893 (5th Cir. 2016) (stating that while plaintiff was not required to mention FMLA in notice to employer, request was insufficient because it did not indicate that he "wanted leave of any kind").

The regulations clarify that: "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b). This is precisely what Plaintiff did here. Plaintiff's texts merely informed Defendant that she was taking time off and did not request extended leave for a serious health condition. Courts have found that similar statements from employees do not qualify as sufficient notice to an employer to trigger the employer's obligations under the FMLA. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999) (finding that employee did not give employer adequate notice of intent to take FMLA leave where he told employer that "he might be suffering from bipolar disorder and needed time off to see a doctor" but never requested leave for serious medical condition); *Satterfield*, 135 F.3d at 980 (finding that employee did not give adequate notice to

employer where employee told employer she "was having a lot of pain in her side" and "would not be able to work that day, but would like to make it up on one of her days off"); *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) (holding that employee did not give employer adequate notice where employee's wife told employer that she was sick and that employee would be out for a while, and employee later informed employer that he would be out, but offered no further information and stated that he did not know when he would return); *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) (finding that employee failed to provide sufficient notice to employer of request to take FMLA for nervous breakdown where employee's wife told supervisor that employee would not be into work because he was having "some tests run").

Plaintiff's texts to Defendant between June 5 and July 20, 2018 show that Plaintiff continued to work despite her ailments and gave no indication that she needed an extended period of leave to treat a serious health condition. *See* Dkt. 16-6 at 1-7. "While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Satterfield*, 135 F.3d at 980 (quoting *Johnson v. Primerica*, 1996 WL 34148, at *5 (S.D.N.Y. 1996)). "The goal [of the FMLA] was not to supplant employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events such as having or adopting a child or suffering from what is termed a 'serious health condition.'" *Satterfield*, 135 F.3d at 981 (quoting *Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir. 1997)). Plaintiff did not provide Defendant enough information "to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Accordingly, Plaintiff has failed to demonstrate that Defendant violated her rights under the FMLA, and Defendant is entitled to summary judgment on this claim.

## V.    Order and Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment (Dkt. 13) and enter judgment in favor of Defendant.

**IT IS FURTHER ORDERED** that Defendant's Objections to Plaintiff's Summary Judgment Response and Motion to Strike (Dkt. 18) and Plaintiff's Motion to Strike Defendant's Statement of Facts (Dkt. 16 at 1 n.1) are **DENIED**.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on September 21, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE